### In re BARNARD.

(Supreme Court, Appellate Division, First Department. June 7, 1912.)

ATTORNEY AND CLIENT (§ 41*)—OFFICE OF ATTORNEY—MISCONDUCT.

　　An attorney who, as notary public, certified that certain persons appeared before him and acknowledged written instruments, when they were in fact not within the state, but who did so merely for convenience, his acts not resulting in injury to any person, and not being intended to injure any one, and not resulting in any gain to himself, is severely censured, but not otherwise disciplined.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 53; Dec. Dig. § 41.*]

Charges by the Association of the Bar of the City of New York against Horace Barnard, an attorney. Respondent censured.

See, also, 146 App. Div. 954, 131 N. Y. Supp. 1103.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Einar Chrystie, of New York City, for petitioner.

INGRAHAM, P. J. The respondent was admitted to practice in April, 1902, and since that time has practiced law in the city of New York. The respondent is also a notary public, and from the year 1897 was the attorney for the trustees under the will of Augustus Zerega, who was the respondent's grandfather. There were four trustees appointed by the will—the testator's wife, two sons, and the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

respondent's mother, who was a daughter. The respondent was charged with having, between December 3, 1902, and February 16, 1906, certified to the acknowledgment of certain instruments in relation to the property of the trust estate, in which he certified that George T. Zerega or John Zerega, the respondent's uncles, had personally appeared before him and had acknowledged the execution of said instruments, when the person making such acknowledgments was not within the state of New York and did not appear before the respondent and acknowledge the execution of the instruments. These instruments were all in the nature of extension of mortgages and satisfaction of mortgages, they were executed in the ordinary administration of the estate, there was no question but what the persons purporting to execute the instruments executed them, and there was no fraud in relation to the transaction, and no loss occurred, either to the estate or to any of those parties having transactions with it. Before the referee the respondent admitted the truth of these charges. His uncle, George T. Zerega, who was one of the trustees, lived in Washington. When an extension of a mortgage, a satisfaction piece, or any other instrument in connection with the management of this estate, was necessary to be signed, the respondent sent it to his uncle, who would sign and return it to the respondent, and he then, when the paper was executed by the other parties, and when it was signed by all the trustees, would affix to it his certificate of acknowledgment. It would appear that these instruments would be returned by George T. Zerega from Washington, or wherever he would happen to be, with a letter saying that he had signed the instruments, and in these letters generally George T. Zerega returned to the respondent a sum of money for his notary fees in taking the acknowledgment.

The respondent admitted that he had signed these acknowledgments when the parties acknowledging them did not appear before him, and stated that he had conducted the affairs of this estate in this way by sending these papers to be acknowledged to the trustees, and upon receiving them back, with a letter stating that they had signed them, putting the certificates of acknowledgment upon them. When asked what was the controlling inducement which led him to conduct the business in this way, he said it was for the convenience, not only of himself, but of George T. and John A. Zerega when they were away; that it was not always convenient for them to go before a notary public, and he did it in order to expedite the matters; that George T. Zerega died November 6, 1907; that during George T. Zerega's life, while there were four trustees, the other three trustees always appeared before him; that after the death of George T. Zerega the two surviving trustees, other than John, always appeared before the respondent and acknowledged the instruments, and John did usually. The grandmother of the respondent, who had a life estate, died in March, 1909.

The referee reports that the charges were duly established by the evidence and frankly conceded by the respondent. The referee then calls attention to section 510 of the Penal Code, now section 885 of the Penal Law (Consol. Laws 1909, c. 40), which makes a person who

willfully certifies falsely to the execution of an instrument which by law may be recorded before him to be guilty of forgery in the first degree, and section 163 of the Penal Code, now section 1861 of the Penal Law, makes a public officer who, being authorized by law to make or give a certificate or other writing, knowingly makes and delivers as true such a certificate or writing, containing any false statement which he knows to be false, is guilty of a misdemeanor. The referee then states that it is conceded that the signatures of George Theodore Zerega and John A. Zerega to all the instruments referred to are genuine, that they intended to sign and acknowledge the same, that no harm has arisen or ever can arise to the trust estate by reason of the irregular manner in which the acknowledgments were certified, that no complaint ever has been made by any person in interest or otherwise of any harm sustained or apprehended by reason thereof, and that no advantage accrued or could accrue to the respondent from his irregular practice. After summing up the case, the learned referee said:

"Upon this point I have to say that the respondent, by his frank admission in the course of the hearing before me, greatly assisted towards bringing the investigation to an early close, and as it was clearly shown that, aside from the offenses herein charged against him, he is a man of excellent character and good professional and social standing, and that the acts complained of produced no harm in any way or manner, I beg leave to recommend that such clemency be extended to him as under all the circumstances the court may deem proper."

This case has been the cause of very serious consideration by the court. The offense charged against the respondent, an attorney at law, is a most serious one. Upon the regularity of acknowledgments of this character depend the title to all the real estate in the city of New York and much personal property. The law prescribes with great particularity the duty of an officer authorized to take acknowledgments of deeds to be recorded, and the strict compliance with that law is necessary for the protection of property. It is difficult to understand how an attorney at law of the standing, position, and education of the respondent should have been guilty of such an offense, and he cannot be too severely censured for his conduct. The referee in his report has commented upon the excellent character of this respondent in all other respects, that the offense was committed without the slightest attempt to deceive or defraud anybody, and that no possible harm could come to the estate which the respondent represented, or any of those interested in it, or any of those dealing with it, by the irregularity complained of. The entire absence of improper motive, and the desire which no doubt prompted the offense being to save his uncles trouble in procuring an acknowledgment to be taken in Washington, or wherever they happened to be, takes the case out of the category of those where an offense has been committed by an attorney with intent to injure or defraud his client or others, and while we cannot too severely censure the respondent for his conduct, we are disposed in this case to exercise the clemency recommended by the referee, and we confine our discipline of the respondent to this censure.

In adopting this recommendation of the official referee, we wish to state that if, after this expression of our views, such an offense should be committed, we should consider it our duty to act with greater severity.

McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ., concur.